UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION


UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                            Case No. 2:25-cv-1141-SPC-KRH

DACISE C. RENE a/k/a
DACISE CADICHE,

      Defendant.

_____/

## ORDER

This matter is before the Court on Plaintiff United States's Motion for Default Judgment against Defendant Dacise C. Rene a/k/a Dacise Cadiche ("Rene"). (Doc. 12). Rene never opposed the motion. Nor did she ever appear in this case. For the reasons explained below, the Court finds the motion for default judgment should be granted.

## Background

The Government filed a Complaint (Doc. 1) against Rene under 26 U.S.C. §§ 7401 *et seq.*, to reduce Rene's income tax liabilities and return preparer penalties to judgment. Rene timely filed federal income tax returns for tax years 2013 and 2014, but she underreported the tax owed. So the Internal Revenue Service ("IRS")

1

assessed the unpaid tax, along with penalties, statutory additions, and interest. Despite notice and demand, Rene never paid.

On that basis, the United States seeks $72,634.63 as of December 4, 2025, plus accruing interest and penalties according to statutory law, for unpaid income taxes for tax years 2013 and 2014. The Government also seeks an additional amount of $623,365.72 as of December 4, 2025, plus accruing interest and penalties according to statutory law, for unpaid return preparer penalties for tax years 2012, 2013, and 2014. Those are the amounts pled in the Complaint, but by the time the United States moved for default judgment, continued accruals had increased both totals. *See infra* Section III.

The United States served Rene and filed proof of service. (Doc. 5). Still, Rene never answered, defended, or otherwise appeared.

### Legal Standard

In this Circuit, "there is a strong policy in favor of resolving cases on the merits and that defaults are viewed with disfavor." *Robinson v. Orange Cnty. Gov't Dep't*, No. 6:24-cv-1143-WWB-LHP, 2024 WL 4956760 (M.D. Fla. Dec. 3, 2024) (citing *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003)). Still, a "district court has the authority to enter default judgment for failure . . . to comply with its orders or rules of procedure." *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985).

After securing a clerk's default under Rule 55(a), a plaintiff must seek default judgment. Fed. R. Civ. P. 55(b)(1)-(2). There are two types of default judgment—

the first is ministerial and entered by the Clerk; the second is discretionary and entered by the Court. *Id.* Which procedure applies depends on the facts of the case.

Where, as here, a plaintiff seeks (1) a sum certain (2) with a properly supported motion (3) against a defaulted, non-appearing defendant (4) who is neither a minor nor incompetent, the Clerk—not the Court—enters default judgment. Fed. R. Civ. P. 55(b)(1). No further inquiry is required. *S.E.C. v. Wright*, 261 F. App'x 259, 261 (11th Cir. 2008) (Rule "55(b)(1) permits entry of judgment by the clerk without any hearing.").

## Discussion

The analysis proceeds in three parts. First, the Court addresses the legal requirements for the Clerk to enter judgment. Second, the inquiry turns to common consideration on default judgments. And third, the analysis concludes this order needs no district judge review.

### A.    Default Judgment by Clerk

Rene meets all four requirements for a default judgment under Rule 55(b)(1).

#### 1.    Sum Certain

A court may resolve a request for monetary relief without a hearing where the claim is for a sum certain, a liquidated sum or an amount capable of mathematical calculation, or where the movant's evidence is otherwise sufficient to support the damages requested. *See S.E.C. v. Smyth*, 420 F.3d 1225, 1231 (11th Cir. 2005). What qualifies isn't always self-evident, but the touchstone is whether

3

the amount is readily ascertainable by simple computation from undisputed, now-admitted facts. 10A Wright & Miller, Federal Practice & Procedure 2683 (4th ed. Apr. 2026 update); *Franchise Holding II, LLC v. Huntington Rests. Grp., Inc.*, 375 F.3d 922, 928-29 (9th Cir. 2004). In short, no doubt can remain "as to the amount to which a plaintiff is entitled as a result of the defendant's default." *Franchise Holding*, 375 F.3d at 929.

That standard applies to enter judgment, without a hearing, on a multi-year federal tax liability that—like Rene's—continued to accrue interest and penalties after the complaint was filed. *See United States v. McCullers*, No. 8:19-cv-1054-T-35JSS, 2019 WL 7194741, at *2-3 (M.D. Fla. Oct. 29, 2019). A default judgment also must not differ in kind from, or exceed in amount, what is demanded in the pleadings. Fed. R. Civ. P. 54(c). Here, the United States seeks the same categories of relief pled in the complaint, plus interest and penalties that continued to accrue after the complaint was filed. That doesn't violate Rule 54(c). *See McCullers*, 2019 WL 7194741, at *2 n.2 (citing *United States v. Wagner*, No. 2:16-cv-292-FTM-38MRM, 2016 WL 4473471, at *3 (M.D. Fla. Aug. 3, 2016), *R&R adopted*, 2016 WL 4441533 (M.D. Fla. Aug. 23, 2016)).

"An 'assessment' amounts to an Internal Revenue Service determination that a taxpayer owes the Federal Government a certain amount of unpaid taxes." *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242 (2002). That assessment carries a "legal presumption of correctness." *United States v. Stein*, 881 F.3d 853, 854-55 (11th Cir. 2018) (quoting *Fior D'Italia, Inc.*, 536 U.S. at 242). But a clerk's

default doesn't hand the United States a judgment in any amount automatically. The Government must first prove the assessment was properly made. Only then does the burden shift to the taxpayer to prove the assessment was erroneous. *Id.* at 855 (quoting *United States v. White*, 466 F.3d 1231, 1248 (11th Cir. 2006)). "The taxpayer has the burden of proving that the computational method used is arbitrary and without foundation." *Olster v. IRS*, 751 F.2d 1168, 1174 (11th Cir. 1985).

The United States made that showing. In support, it submitted declarations of IRS Revenue Officer James Doane (Doane Declaration) and Christopher Merino, a DOJ Tax lawyer (Merino Declaration). (Doc. 12-1; Doc. 12-1). The Merino Declaration confirms that Rene isn't in the military. (Doc. 12-2 at 5). The Doane Declaration addresses Rene's account transcripts. Doane declares that he investigates taxpayer assets and recommends suits to collect taxes and enforce liens; and he confirms familiarity with IRS record keeping and the computer systems tracking taxpayer accounts. (Doc. 12-1 at 1). Doane also states that he was assigned to collect Rene's federal tax liabilities and penalties.

a.    Unpaid Income Tax

Rene timely filed Forms 1040 for tax years 2013 and 2014—claiming overpayments of the tax she reported. And the IRS issued refunds of $16,013.00 and $9,445.00 for those years, respectively. (Doc. 12 ¶ 1). The IRS then examined Rene's returns and found that she had underreported her tax liability.

As a result, the IRS issued Rene a notice of deficiency for 2013 and 2014 to her last known address. After the assessment restriction in 26 U.S.C. § 6213(a) lapsed, a delegate of the Secretary of the Treasury assessed tax, penalties, and interest against her fort both years. (Doc. 12 ¶ 2). Doane attached account transcripts reflecting those assessments. (Doc. 12-1 at 2-3).

The delegate gave notice of the assessments and demanded payment. Despite that notice and demand, Rene never paid her outstanding income tax liabilities (Doc. 12 ¶ 3).

Rene also never contested the computation. So the presumption of correctness stands, for the same reasons discussed above. As of June 30, 2026, Rene owes $75,402.14 plus statutory interest for unpaid federal income tax liabilities for tax years 2013 and 2014.

b.      Return Preparer Penalties

During 2012 through 2014, Rene worked as a paid tax return preparer at Madam Sante Publik Training Center ("Madam Sante") in Fort Myers. She registered Madam Sante as a fictitious name with Florida's Division of Corporations in 2010 and renewed that registration in 2015. Rene obtained a PTIN from the IRS, which she used to identify herself on the returns she prepared for customers. (Doc. 12 ¶¶ 5-6).

The IRS determined that Rene violated 26 U.S.C. § 6694(a)-(b) by preparing returns that willfully or recklessly understated her customers' tax liability based on a position she knew, or should have known, was unreasonable. The IRS also

determined that Rene endorsed or negotiated refund checks payable to her customers, in violation of 26 U.S.C. § 6695(f). (Doc. 12 ¶ 7).

Based on that conduct, a delegate of the Secretary of the Treasury assessed return preparer penalties against Rene for tax years 2012, 2013, and 2014. (Doc. 12 ¶ 8). The delegate issued notice of those assessments and demanded payment. Despite that notice and demand, Rene never paid. (Doc. 12 ¶ 9).

As with the income tax assessment, the Doane Declaration and its attached account transcripts establish the return preparer penalties as a prima facie matter. An account transcript accompanied by a sworn IRS declaration is entitled to a presumption of validity even without the underlying Form 4340. *See United States v. Louisville*, No. 8:20-cv-559-VMC-CPT, 2021 WL 2580301, at *6 (M.D. Fla. Mar. 2, 2021), *R&R adopted*, 2021 WL 2580211 (M.D. Fla. Mar. 24, 2021). Courts in this district rely on exactly that combination—declaration plus transcript—to validate assessments on default judgments. *See United States v. Kopischke*, No. 8:16-cv-3486-T-27TBM, 2017 WL 2799432, at *4 (M.D. Fla. May 11, 2017), *R&R adopted*, 2017 WL 2800064 (M.D. Fla. June 7, 2017); *see also United States v. Bennett*, No. 8:09-cv-1952-T-27TGW, 2011 WL 7090744, at *4-5 (M.D. Fla. June 7, 2011), *aff'd*, 448 F. App'x 991 (11th Cir. 2011).

Rene never rebutted that showing. As of June 30, 2026, she owed $647,117.09 plus statutory interest in unpaid return preparer penalties for 2012 through 2014.

### 2. Proper Support

The United States filed an appropriate motion supported by declarations and account transcripts establishing the amounts due. Fed. R. Civ. P. 55(b)(1). As required, these papers confirm the total sum certain owed to the Government. (Doc. 12-1; Doc. 12-2).

### 3. Failure to Appear

Rene is in default because she never appeared in this case. Fed. R. Civ. P. 55(b)(1). A process server swore out service (Doc. 5). Yet there is no sign that Rene attempted to defend herself.

### 4. Defendant Subject to Default Judgment

Rene is an individual who is neither a minor nor an incompetent person. Fed. R. Civ. P. 55(b)(1); (Doc. 12-2 ¶ 2). The Merino Declaration also confirms that she is not in current, active military service. (Doc. 12-2 at 5). While not demanded by Rule 55(b)(1), that certification is statutorily required. 50 U.S.C. § 3931(a)-(b)(1).

### 5. Conclusion

In short, the United States satisfied all four requirements for default judgment on a sum certain. The Clerk therefore "must enter judgment for that amount." Fed. R. Civ. P. 55(b)(10.

## B.   Common Considerations

To be clear, there is no Rule-based requirement for the Court to review default judgments for matters like personal jurisdiction or sufficiency of the

pleadings. Fed. R. Civ. P. 55(b)(1). That said, many judges quickly ensure that cases pass the smell test on such matters before entering judgment. *E.g.*, *Alvarez v. Gregory HVAC LLC*, No. 8:19-cv-1826-CEH-JSS, 2021 WL 3857560, at *2-3 (M.D. Fla. Aug. 30, 2021). Out of deference and without deciding whether the analysis is required, the Court undertakes that brief review. *See id.*

First, the United States alleges that "[t]his action is authorized by the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury, and is brought at the direction of a delegate of the Attorney General of the United States in accordance with 26 U.S.C. § 7401." (Doc. 1 ¶ 2). The United States claims this Court has jurisdiction pursuant to 26 U.S.C. § 7402 and 28 U.S.C. §§ 1340 and 1345. (Doc. 1 ¶ 3). That's enough to confer subject-matter jurisdiction. *See United States v. Goldston*, 324 F. App'x 835, 837 (11th Cir. 2009) (finding jurisdiction where the government was a party, the action involved federal tax laws, and the court could enforce the revenue laws).

Second, the record confirms proper service. Under Federal Rule of Civil Procedure 4(e)(2), service is made by either (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process. *See* Fed. R. Civ. P. 4(e)(2). Here, the United States served a copy of the summons and Complaint on February 26, 2026. Specifically, the process server certified that she served Danise Rene by

9

delivering a copy of the summons and Complaint to Hatch Pascal, described as a 23-year-old son/co-occupant located at Rene's usual place of abode. (Doc. 5). Based on the United States's sworn service, the Clerk entered default. But Rene still failed to appear. On these facts, there is no reason to doubt that service was proper, the Court has personal jurisdiction over Rene, and that the clerk's default was appropriate.

## C.  Order on Default Judgment

Finally, the Court briefly explains why this matter was addressed by order rather than report and recommendation. A magistrate judge's powers are limited by the interplay of Article 3 with 28 U.S.C. § 636 and Rule 72. The entry of final judgment seems like an obvious limitation contemplated by these authorities.

But here, the entry of judgment is the duty of the Clerk—not the Court. Since there is no right to Article 3 review before a clerk enters default judgment under Rule 55(b)(1), there is no obvious problem with an Article 1 judge directing that action. *See In re Butler Innovative Sols.*, No. 08-00065, 2011 WL 4628746, at *1 (Bankr. D.D.C. Oct. 4, 2011). In fact, there is no order even needed for the clerk to enter judgment. With a sum-certain default judgment, a magistrate judge is merely checking plaintiff's work as a courtesy and in an abundance of caution before the clerk exercises her obligation to enter judgment. This common practice, however, does not somehow nullify or displace the clerk's power to enter judgment. *See* Fed. R. Civ. P. 55(b)(1); *see, e.g.*, *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co.*, 313 F.3d 385, 392 (7th Cir. 2002) ("For federal rules of procedure have

the force of statutes."); 28 U.S.C. § 2072(b).

The Clerk has the authority to enter a sum-certain default judgment here without the need for any judge to sign off. So there is no legal (or even logical) requirement for an Article 1 judge to present a recommendation to an Article 3 judge for entry of judgment when no review was required in the first place. On review, that procedure amounts to illusory, multilevel make-work. Rather than engage in such unnecessary review procedures, the law provides a clear, simple avenue for parties to challenge a clerk's default judgment. Rule 55(c) allows a district judge to set aside a default judgment under Rule 60(b); or a party can appeal the final default judgment. Either avenue guarantees Article 3 review. *See* 10A Wright and Miller Federal Practice & Procedure § 2683.

In short, there is no reason for a magistrate judge to recommend that a district judge order approval of something not required by law. This includes a sum-certain default judgment—which is within a clerk's power to enter without a court order. As many other magistrate judges conclude, therefore, this decision to direct the Clerk's action may be made by order. *E.g.*, *Denham v. EYM Diner of Fla.*, No. 2:25-cv-94-SPC-NPM, Doc. 30 (M.D. Fla. Mar. 25, 2026) (Mizell, J.).

**ORDERED:**

1.    Plaintiff's Motion for Default Judgment (Doc. 12) is **GRANTED**.

2.    The Clerk is **DIRECTED** to enter Judgment in favor of the Plaintiff and against the Defendant in the following amounts:

11

    a.    $75,402.14 as of June 30, 2026, plus accruing interest and penalties according to law, for unpaid income taxes for tax years 2013 and 2014; and

    b.    $647,117.09 as of June 30, 2026, plus accruing interest and penalties according to law, for unpaid return preparer penalties for tax years 2012, 2013, and 2014.

3. The Clerk is **DIRECTED** to close this case.

In Fort Myers, Florida on July 15th, 2026.

Kevin R. Huguelet
United States Magistrate Judge